UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

JOE HAND PROMOTIONS, INC.,          :
                  :
         Plaintiff,        :
                  :          **REPORT AND**
    -against-         :      **RECOMMENDATION**
                  :    21 Civ. 6563 (PKC) (VMS)
THE CRISIS BAR LLC, ROSCOE NEELY, :
ALICIA RICHARDSON NEELY,     :
                  :
        Defendants.    :
                  :

------------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Joe Hand Promotions Inc. ("Plaintiff") brought this action against Defendants The Crisis Bar LLC, Roscoe Neely and Alicia Richardson Neely (collectively, "Defendants"), alleging that Defendants violated the Federal Communications Act of 1934 (the "FCA"), 47 U.S.C. §§ 553[1] and 605,[2] by broadcasting five pay-per-view fights without paying the requisite sublicensing fee.  See ECF No. 1.  Defendants failed to appear.  Before the Court is Plaintiff's motion for default judgment.  See ECF No. 12.  The Honorable Pamela K. Chen referred the motion for a report and recommendation.  For the following reasons, I respectfully recommend that the District Court grant in part and deny in part the motion and award judgment of $11,400 in statutory damages; $2,700 in enhanced damages; $1,230 in attorney's fees; and $607 in costs, for a total award of $15,937, against The Crisis Bar LLC and in favor of Plaintiff, and that the

---

[1] Section 553 provides, inter alia, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

[2] Section 605 provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person."  47 U.S.C. § 605(a).

District Court deny the motion as against the individual Defendants.

## I.    Background

The following facts are drawn from the docket and Plaintiff's Complaint.  See ECF No. 1.

Plaintiff, a Pennsylvania corporation that distributes sports and entertainment programming, held exclusive commercial distribution rights to the broadcast of five pay-per-view fights: (1) Deontay Wilder v. Tyson Fury on December 1, 2018; (2) Manny Pacquiao v. Adrien Broner on January 19, 2019; (3) Errol Spence, Jr. v. Mikey Garcia on March 16, 2019; (4) Deontay Wilder v. Dominic Breazeale on May 18, 2019; and (5) Deontay Wilder v. Tyson Fury II on February 22, 2020 (collectively the "Programs").  ECF No. 1 ¶¶ 1, 8.  Plaintiff entered into agreements with commercial establishments in New York whereby Plaintiff would, in exchange for a fee, broadcast the Programs via satellite signal and permit the participating establishments to exhibit the Programs to their patrons.  Id. ¶¶ 9–10.  Plaintiff "expended substantial monies to market, advertise, promote, administer and transmit the Programs to those establishments in the State of New York."  Id. ¶ 10.

The Crisis Bar LLC is a commercial establishment in Brooklyn, New York.  Id. ¶ 2. Defendants Roscoe Neely and Alicia Richardson Neely are officers, directors, shareholders, members and/or principals of The Crisis Bar LLC.  Id. ¶¶ 3–4.  Neither The Crisis Bar LLC nor either individual Defendant was authorized to exhibit the Programs.  Id. ¶ 11.  Plaintiff alleges that despite this, Defendants "willfully intercepted or received the interstate communications of the Programs or assisted in such actions" "then unlawfully transmitted, divulged and published said communications, or assisted in unlawfully transmitting, divulging and publishing said communications to patrons" at The Crisis Bar.  Id. ¶¶ 12–13.

Plaintiff asserts that Defendants "pirated Plaintiff's licensed exhibition of the Programs and infringed upon Plaintiff's exclusive rights while avoiding proper authorization and payment to Plaintiff," and that Defendants did so "willfully and with the purpose and intent to secure a commercial advantage and private financial gain." Id. ¶ 14. Plaintiff seeks statutory damages in the amount of $11,100, pursuant to § 605(e)(3)(C)(i)(II); $33,300 in enhanced statutory damages pursuant to § 605(e)(3)(C)(ii); plus $1,435 in attorney's fees and $607 in costs. See ECF No 12-1 at 16.[3]

## II.    Procedural History

On November 23, 2021, Plaintiff commenced the action against Defendants. See ECF No. 1. On January 12, 2022, Plaintiff's summons on Defendants was returned executed; Plaintiff provided affidavits of service indicating that it had successfully served the summons and complaint on Defendants on December 30, 2021. See ECF Nos. 8, 8-1, 8-2. Defendants did not answer or otherwise respond to the complaint.

Plaintiff requested a certificate of default, which the Clerk of Court entered. See ECF Nos. 10–11. Plaintiff timely filed the instant motion. See ECF No. 12. In addition to the allegations in the complaint, Plaintiff submitted a report by an auditor whom Plaintiff hired to visit The Crisis Bar on December 1, 2018; this auditor observed 10 television sets displaying one of the Programs, Wilder v. Fury, for approximately 50 patrons. See ECF No. 12-12. The auditor paid a $20 cover charge to enter and observed the operations of The Crisis Bar on December 1.

---

[3] Plaintiff's complaint claimed up to $110,000 for Defendants' alleged willful violation pursuant to 47 U.S.C. § 605 or up to $60,000 for Defendants' alleged willful violation under 47 U.S.C. § 553, plus attorney's fees, interest and costs. See ECF No. 1 ¶ 19. These requests were modified in Plaintiff's memorandum in support of the motion for default judgment, which was filed after the Clerk of Court entered default; therefore, the amounts requested in the complaint were not considered in this report and recommendation. See ECF No. 12-1 at 16.

Id.  Plaintiff provided screenshots of The Crisis Bar Facebook page in which it advertised screenings of all five Programs live in The Crisis Bar.  See ECF No. 12-16.  In addition, Plaintiff provided a January 2, 2019 letter that Plaintiff sent to Defendants demanding that they cease playing the Programs without authorization.  See ECF No. 12-17.  Plaintiff does not show confirmation of Defendants' receipt of this letter or state whether Plaintiff received a reply to this letter.

The Court scheduled a telephone conference to discuss the default judgment motion, invited Defendants to attend by mailing the notice to 913 Broadway, Brooklyn, NY 11206 and 510 Kosciusko Street, Brooklyn, NY 11221, and warned Defendants that failure to participate in the lawsuit may result in a judgment against Defendants.  See ECF No. 13.  Plaintiff filed a certificate of service stating that they served copies of the complaint, docket and Order on the Defendants.  See ECF No. 14.  Defendants did not attend the conference.  See Dkt. Entry 5/31/2022.

## III.    Discussion

### a.  Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure by which a party may obtain a default judgment.  See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (citing Fed. R. Civ. P. 55); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993).  First, if a party has failed to plead or otherwise defend against an action, the Clerk of Court must enter a certificate of default by making a notation on the record.  See Fed. R. Civ. P. 55(a).  Second, after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded.

4

See Fed. R. Civ. P. 55(b).  The trial court has the "sound discretion" to grant or deny a motion

for default judgment.  See Enron Oil, 10 F.3d at 95.  In light of the Second Circuit's "oft-stated

preference for resolving disputes on the merits," default judgments are "generally disfavored,"

and doubts should be resolved in favor of the defaulting party.  Id. at 95–96 (recognizing "the

responsibility of the trial court to maintain a balance between clearing its calendar and affording

litigants a reasonable chance to be heard").  The court must therefore ensure that (1) the plaintiff

satisfied all required procedural steps in moving for default judgment, see Local Civ. R. 55.2;

and (2) the plaintiff's allegations, when accepted as true, establish liability as a matter of law, see

Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

In considering a motion for default judgment, "the [c]ourt accept[s] as true all of the

factual allegations of the complaint, except those relating to damages."  G & G Closed Circuit

Events, LLC v. Batista, No. 21 Civ. 7352 (AKH) (SDA), 2022 WL 1571987, at *3 (S.D.N.Y.

May 3, 2022) (internal citations omitted).  Once liability has been established, a court must

"conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Am.

Jewish Comm. v. Berman, No. 15 Civ 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y.

June 15, 2016) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d

Cir. 1999)), report & recommendation adopted, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016).  A

plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate

[its] claim with evidence to prove the extent of damages."  Dunn v. Advanced Credit Recovery

Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012).  The

evidence the plaintiff submits must be admissible.  See Poulos v. City of New York, No. 14 Civ.

3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), report &

recommendation adopted, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018).  If plaintiff's submitted

evidence provides a sufficient basis from which to evaluate the fairness of the requested damages, the court need not conduct an evidentiary hearing.  See Fustock v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (explaining that court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment") (citation omitted)).

### b.  Service Of The Summons And Complaint

"A plaintiff seeking a default judgment must offer proof of proper service," J&J Sports Prod., Inc. v. Dowling, No. 18 Civ. 5086 (EK) (RML), 2020 WL 7090205, at *2 (E.D.N.Y. Dec. 3, 2020) (citing Fed. R. Civ. P. 4(l)(1)); N.Y. C.P.L.R. § 3215(f)), "which requires the server to 'disclose enough facts to demonstrate validity of service.'"  Dowling, 2020 WL 7090205, at *2 (quoting Wright & Miller § 1130 Return of Service, 4B Fed. Prac. & Proc. Civ. § 1130 (4th Ed.)).  Both federal and New York state law provide that a summons and complaint must both be served for service to be proper.  See Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint. . . . The plaintiff is responsible for having the summons and complaint served within the time allowed . . . and must furnish the necessary copies to the person who makes service."); Fed. R. Civ. P. 4(e)(1), (2)(A) ("[A]n individual . . . may be served in a judicial district of the United States by [following state law] or . . .  delivering a copy of the summons and of the complaint to the individual personally[.]"); Fed. R. Civ. 4(h)(1)(A)-(B) ("[A] domestic . . . corporation . . . must be served . . . [following state law] or by delivering a copy of the summons and of the complaint to an officer . . . or any other agent authorized by appointment or by law to receive service of process[.]"); N.Y. C.P.L.R. § 308(1) ("Personal service upon a

natural person shall be made . . . by delivering the summons within the state to the person to be served[.]"); Deutsche Bank Nat'l Tr. Co. v. Simpson, 175 N.Y.S.3d 312, 312 (2d Dep't 2022) (noting that C.P.L.R. § 308 required delivery of the summons and complaint).

### i. Service On The Crisis Bar LLC

As to The Crisis Bar LLC, Rule 4(h)(1)(B) provides that service upon a corporation may be effected by delivering copies of the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). New York law also provides that service upon a corporation may be effected by delivering copies of the summons and complaint "to an officer, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1). Plaintiff's affidavit of service as to The Crisis Bar LLC reflects that the process server personally delivered the complaint and summons to "John-Refused name," identified as a "Manager" at The Crisis Bar who "specifically stated he[] was authorized to accept service" on behalf of The Crisis Bar LLC. See ECF No. 8-1.

Service on a manager is not necessarily service on a managing agent. Courts recognize a distinction between a "manager" and a "managing agent" for the purposes of service; a manager is not a managing agent per se. See J & J Sports Prod. Inc. v. RK Soto Enterprises Inc., 17 Civ. 2636 (WFK) (VMS), 2020 WL 7684894, at *7 (E.D.N.Y. Feb. 7, 2020), report & recommendation adopted, 2020 WL 7041089 (E.D.N.Y. Dec. 1, 2020) ("[A] managing or general agent must be invested with powers of discretion and must exercise judgment in his duties, rather than being under direct superior control as to the extent of his duty and the manner in which he executes it." (internal quotation marks omitted)); Feng Lin v. Quality Woods, Inc.,

No. 17 Civ. 3043 (DLI) (SJB), 2019 WL 1450746, at *5 (E.D.N.Y. Jan. 28, 2019) ("A managing agent is not a manager in the colloquial sense, i.e. a person whose role is to supervise the day-to-day work of other employees.").  Where a process server does not include the basis for the belief that a recipient of process holds a relevant position or title, a court may reject the service as insufficient.  See Chen v. Best Miyako Sushi Corp., No. 16 Civ. 2012 (JGK) (BCM), 2021 WL 707273, at *9 (S.D.N.Y. Feb. 1, 2021), report & recommendation adopted, 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021) (finding service on corporate defendant was insufficient when plaintiff's process server claimed the served employee was a managing agent without explaining how the server could identify the employee as such); Macerich Queens Ltd. P'ship v. M.I.E. Hosp., Inc., 746 N.Y.S.2d 341, 342 (Civ. Ct. Queens Cnty. 2002) (holding that, although plaintiff served process on a manager, service was not sufficient because the process server "neither adduced any evidence whatsoever that this restaurant manager was a managing agent of the respondent corporation nor made any claim that the person served fell within any of the other categories of individuals specified in § 311(a)(1)" (internal quotation marks omitted)).  In RK Soto, for example, the court concluded that service on a corporate defendant was insufficient where the server's affidavit merely stated that a manager was authorized to accept service without "describ[ing] the basis of his knowledge."  2020 WL 7684894, at *7.

Despite the specificity of CPLR § 311(a)(1), New York courts have held that process servers may rely on the representations of corporate employees as to who is authorized to accept service, and that service done in reliance on these representations is sufficient.  See, e.g., Juul Labs, Inc. v. EZ Deli Grocery Corp I, No. 21 Civ. 2615 (MKB) (VMS), 2022 WL 1085406, at *4 (E.D.N.Y. Feb. 10, 2022), report & recommendation adopted, 2022 WL 819152 (E.D.N.Y. Mar. 18, 2022) (finding that service on corporate defendant was proper because, where the manager

stated the manager was authorized to accept service, "it was reasonable to conclude [the manager] was either a managing agent or authorized to accept service"). "Service of process on a corporate defendant will be sustained where a process server reasonably relies upon the representation of a corporate employee who claims to have the authority to accept service of process and where 'service [was] made in a manner which, objectively viewed, [was] calculated to give the [defendant] fair notice.'" Pain Mgmt. Ctr. of New Jersey, P.C. v. All Car Rent-A-Car, 68 N.Y.S.3d 379, 380 (App. Div. 2d Dep't 2017) (quoting Fashion Page v. Zurich Ins. Co., 50 N.Y.2d 265, 272–73 (N.Y. 1980)). "In tendering service, the process server may rely upon the corporation's employees to identify the individuals authorized to accept service." Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002); Sullivan Realty Org., Inc. v. Syart Trading Corp., 417 N.Y.S.2d 976, 978–80 (App. Div. 2d Dep't 1979) (holding that service of process on secretary-receptionist was proper where she represented that she was authorized to accept on behalf of corporate defendants). "[F]urther inquiry [by the process server] [is] not mandated" where a manager stated that the manager was authorized to accept service. Dunn v. Pallett, 889 N.Y.S.2d 682, 684 (App. Div. 3d Dep't 2009). "[W]hen the corporation is regularly doing business in the State, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions." Fashion Page, 50 N.Y.2d at 272–73; Aguilera v. Pistilli Const. & Dev. Corp., 882 N.Y.S.2d 145, 146–47 (App. Div. 2d Dep't 2009) (holding that service was proper under § 311 where process was served on a non-employee seated behind a receptionist's desk who represented that she was authorized to accept); Martin v. Archway Inn, 559 N.Y.S.2d 731, 732 (App. Div. 1st Dep't 1990) (holding that service was proper under § 311 where process server

delivered summons and complaint to employee who "represented herself as a manager" and stated that she was able to take service because in doing so the server "already fulfilled his obligation of assuring that fair notice would be given").

A manager of a business operation such as a branch office can qualify as a "managing agent," see Green v. Morningside Heights Hous. Corp., 177 N.Y.S.2d 760, 760–61 (Sup. Ct. 1958), aff'd, N.Y.S.2d 104 (App. Div. 1st Dep't 1958), or alternatively, as an "other agent authorized by appointment or by law to receive process," Aguilera, 882 N.Y.S.2d at 146. The appointment can happen informally. See Fashion Page, 50 N.Y.2d at 272–73 (holding that New York law "does not require that [appointment of an agent authorized to accept service] be done with any particular formality").

Here, the process server alleged that the manager on whom he served the complaint and summons identified himself as being "authorized to accept service" on behalf of The Crisis Bar LLC. ECF No. 8-1. The process server relied on the manager's own representations to make that identification. Unlike in RK Soto and Feng Lin, the process server here described a basis of knowledge for believing the manager was authorized to accept service. RK Soto, 2020 WL 7684894; Feng Lin, 2019 WL 1450746, at *5. Here, in addition, the service was made on the two owners under CPLR § 308(2), infra at 11–12; given the small size of the business, delivery to these individuals helped assure corporate notification. See Pain Mgmt. Ctr., 68 N.Y.S.3d at 379–80 (finding proper service under CPLR § 311 in default judgment where plaintiff alleged an employee of corporate defendant stated she was authorized to accept service and "defendant failed to rebut" these allegations).

Plaintiff also timely filed proof of service as to The Crisis Bar LLC; the affidavit of service reflects that Plaintiff delivered the summons and complaint to The Crisis Bar LLC on

December 30, 2021, and, pursuant to CPLR § 308(2), filed the affidavit of service on January 12, 2022.  See ECF No. 8-1; CPLR § 308(2) (requiring any proof of service to be filed within twenty days of the delivery or mailing, whichever is effected later).

### ii.  Service On The Individual Defendants

For the individual Defendants, the affidavits of service reflect that the process server delivered the complaint and summons to "John-Refused name" at The Crisis Bar and mailed postpaid copies to the same address in a properly marked envelope.  See ECF Nos. 8, 8-2. Federal Rule of Civil Procedure 4 provides for service upon an individual by, inter alia, following state law.  Fed. R. Civ. P. 4(e).  New York law permits service on an individual "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . ."  N.Y. C.P.L.R. § 308(2).

In addition to the allegations in the complaint, Plaintiff provided a New York State Liquor Authority query showing that the individual Defendants are listed as liquor license principals of The Crisis Bar at the address on which process was served.  See ECF No. 12-15. That the individual Defendants are principals on The Crisis Bar's liquor license suggests that the bar is their actual place of business for the purposes of service.  See, e.g., Jimenez v. Bosie, LLC, 19 Civ. 11570 (ER), 2021 WL 2941916, at *5 (S.D.N.Y. July 12, 2021) (finding that defendant was served at his actual place of business under federal and New York law because, inter alia, he was listed as a principal on its liquor license); J & J Sports Prod., Inc. v. El Ojo Aqua Corp., No. 13 Civ. 6173 (ENV) (JO), 2014 WL 4700014, at *4 (E.D.N.Y. Aug. 29, 2014), report & recommendation adopted, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014) (concluding that an

individual's name listed as a principal on a liquor license suggests a "general ability to supervise the establishment's operations and enjoy its profits").

As for timeliness, the affidavits of service show that Plaintiff mailed the summons and complaint to the individual Defendants on January 3, 2022, then timely filed the affidavits on January 12, 2022.  See ECF Nos. 8, 8-2; CPLR § 308(2).  In light of this, Plaintiff's service on the individual Defendants conformed to the requirements of CPLR § 308(2) and, therefore, Rule 4(e).

### iii.  Default Judgment Motion

Service of the complaint and summons on Defendants being sufficient, the Court also observes that Plaintiff complied with the procedural requirements for moving for a default judgment.  Plaintiff requested and obtained entries of default for Defendants, and moved for a default judgment.  See Local Civ. R. 55.2(a)-(b); ECF Nos. 10–12.  Plaintiff complied with the requirement to mail the default judgment papers to the last known business address of The Crisis Bar LLC and last known home address of the individual Defendants.  See Local Civ. R. 55.2(c); ECF Nos. 14–17.  In addition, the Court mailed notices about the case to Defendants on two separate dates.  See ECF No. 13; Dkt. Entry 5/31/2022 Order.

The Court turns now to the question of whether Plaintiff's allegations establish liability as a matter of law.

### c.  Liability

As noted above, entry of a default judgment constitutes admission of all well-pleaded allegations, except those pertaining to the amount of damages.  See A&B Alternative Mktg. Inc. v. Int'l Quality Fruit Inc., 35 F.4th 913, 915 (2d Cir. 2022).  "[C]onclusory allegations based on information and belief" will not suffice to support a finding of default-based liability.  J & J

Sports Prods., Inc. v. Daley, No. 06 Civ. 238 (ERK) (JO), 2007 WL 7135707, at *3–4 (E.D.N.Y. Feb. 15, 2007), report & recommendation adopted, 2020 WL 041089 (E.D.N.Y. Mar. 20, 2007). "However, allegations on information and belief may be sufficient to hold defendant individually liable on default judgment where they state facts primarily within the defendant's knowledge." Sciascia v. Prime Protective Servs., Inc., No. 13 Civ. 800 (ADS) (AKT), 2014 WL 940721, at *5 (E.D.N.Y. Mar. 11, 2014) (collecting cases).

Plaintiff has alleged violations of the FCA under §§ 605 and 553.  Section 605 "generally prohibits the unauthorized use or publication of wire or radio communications."  Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1007 (2d Cir. 1993).  Courts in the Second Circuit have applied § 605 to the theft of cable communications including, as here, pay-per-view events transmitted by satellite signal.  See J & J Sports Prod., Inc. v. Reynolds, No. 18 Civ. 2540 (FB) (ST), 2019 WL 1299408, at *3 (E.D.N.Y. Jan. 11, 2019), report & recommendation adopted, 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019) ("Courts in this jurisdiction typically find an allegation that defendant broadcasted a program without obtaining the rights to do so sufficient to establish liability under [§] 605 of the FCA."); Joe Hand Promotions, Inc. v. Beer Closet, Inc., 17 Civ. 3735 (RRM) (RML), 2018 WL 4138938, at *2 (E.D.N.Y. July 27, 2018) (collecting cases), report & recommendation adopted, 2018 WL 4119548 (E.D.N.Y. Aug. 29, 2018).  Therefore, "all that must be alleged to state a Section 605 claim is that the communication originated via satellite or radio."   Joe Hand Promotions, Inc. v. Kouvaros, No. 20 Civ. 3979 (EK) (SJB), 2022 WL 1422571, at *5 (E.D.N.Y. February 1, 2022).

Plaintiff satisfied this minimal standard as to The Crisis Bar LLC.  Plaintiff alleges that the Programs "originated via satellite uplink" and that Plaintiff "re-transmitted interstate to cable and satellite systems" pursuant to agreements authorizing exhibition of the Programs by

participating commercial establishments.  ECF No. 1 ¶ 9; see J & J Sports Prods. v. Abdelraouf, No. 18 Civ. 2547 (ARR) (VMS), 2018 WL 7916309 at *4 (E.D.N.Y. Nov. 21, 2018) (holding that § 605 may be violated "if at least part of the [e]vent's transmission was produced by satellite").[4]  Plaintiff further alleges that The Crisis Bar LLC displayed the events in The Crisis Bar without authorization.[5]  See ECF No. 1 ¶¶ 11–12.  "Similar allegations have routinely been found sufficient to state a claim for relief under Section 605 of the FCA in this District."  J & J Sports Prods., Inc. v. Barretta, No. 18 Civ. 5111 (NG) (ST), 2019 WL 7284249, at *3 (E.D.N.Y. Sept. 10, 2019), report & recommendation adopted, 2019 WL 7283284 (E.D.N.Y. Dec. 27, 2019) (collecting cases).  It is therefore respectfully recommended that a default judgment on liability be entered against Defendant The Crisis Bar LLC.

For the individual Defendants, Plaintiff alleges that Defendants Roscoe Neely and Alicia Richardson Neely are "directly liable" under § 605 or, alternatively, "vicariously liable" for the same violation.  See ECF No. 12-1 at 14.  "Establishing individual liability under Section 605(a) requires showing either 'contributory infringement,' which arises when the individual 'authorize[d] the violations,' or 'vicarious liability,' which arises when the individual 'had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'"  Joe Hand Promotions, Inc. v. Disla,

---

[4] This allegation is supported by the affidavit of Plaintiff's auditor, who witnessed the Wilder v. Fury fight displayed at The Crisis Bar, see ECF No. 12-12, and screenshots of The Crisis Bar Facebook page in which the broadcast of the five Programs was advertised, see ECF No. 12-16, although these details are not included in Plaintiff's complaint.

[5] Although Plaintiff cannot identify the method through which Defendants intercepted the Programs, doing so is unnecessary to state a § 605 claim.  See Kouvaros, 2022 WL 1422571, at *5 ("[A] plaintiff need not allege how the defendant actually received the signal; all that must be alleged to state a Section 605 claim is that the communication originated via satellite or radio." (internal quotation marks omitted)).

No. 19 Civ. 788 (NG) (SMG), 2020 WL 2572268, at *2 (E.D.N.Y. Feb. 3, 2020), report & recommendation adopted, 2020 WL 3451659 (E.D.N.Y. June 24, 2020) (quoting J & J Sports Prods., Inc. v. Tellez, No. 11 Civ. 2823 (SMG), 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011)).  "Courts considering motions for default judgments have required more particularized allegations than those based solely on an individual defendant's position as officer, director, shareholder and/or principal."  Id.; Joe Hand Promotions, Inc. v. Shaikh, 19 Civ. 3500 (MKB) (RLM), 2020 WL 1878165, at *5–6 (E.D.N.Y. Mar. 4, 2020)  (holding that plaintiff did not establish individual liability because plaintiff's allegations that the defendant supervised the showing of intercepted programs "fail[ed] to identify any actions the individual defendant took" or show that defendant "had an obvious and direct financial interest in the infringement" (internal quotation marks, alterations omitted); but see Batista, 2022 WL 1571987, at *5–6 (holding that plaintiff established individual liability by alleging that individual defendant had supervisory control and a direct financial interest in showing intercepted programs).  Instead, courts must consider whether a plaintiff has alleged that the individual defendant "was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it." J & J Sports Prods., Inc., v. 291 Bar & Lounge LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009).

Plaintiff's complaint provides that the individual Defendants each "approved, directly participated in, and/or assisted in [The Crisis Bar's] unauthorized exhibition of the Programs," ECF No. 1 ¶¶ 3(a), 4(a); "was an officer, director, shareholder, member and/or principal of the entity owning and operating [The Crisis Bar]," id. ¶¶ 3(b), 4(b); "had a right and ability to supervise the activities of [The Crisis Bar]," id. ¶¶ 3(c), 4(c); and "had an obvious and direct financial interest in the activities of the Establishment," id. ¶¶ 3(d), 4(d).  Plaintiff does not provide any specific facts to support these allegations.  Instead, these allegations "merely recite[]

the elements . . . in rote, boilerplate format," which is insufficient to establish either contributory or vicarious liability.  J&J Sports Prods., Inc. v. Dang, No. 19 Civ. 5112 (ARR) (RER), 2020 WL 6364898, at *3 (E.D.N.Y. Oct. 13, 2020), report & recommendation adopted, 2020 WL 6363905 (E.D.N.Y. Oct. 29, 2020).  Plaintiff does not allege that the individual Defendants were present for the violations, authorized or controlled them, or received a commercial profit from them.  See 291 Bar & Lounge LLC, 648 F. Supp. 2d at 473; see, e.g., J & J Sports Prods., Inc. v. Espinal, No. 19 Civ. 5180 (PKC) (RER), 2020 WL 2747981, at *3 (E.D.N.Y. May 26, 2020) (denying motion for default judgment where plaintiff relied upon conclusory allegations).  The allegations are insufficient either to "identify any actions [the individual defendants] took" to show they supervised the events or show "an obvious and direct financial interest in the infringement." Shaikh, 2020 WL 1878165, at *5–6 (internal quotation marks omitted).

Plaintiff's sole other evidence of the individual Defendants' liability is their status as principals on The Crisis Bar's liquor license.  See ECF No. 12-15.  This fact is not sufficient to connect the individual Defendants to the alleged infringement activities.  See G&G Closed Cir. Events, LLC v. Gonzalez, No. 20 Civ. 4278 (PKC) (RML), 2021 WL 9822076, at *4 (E.D.N.Y. Sept. 29, 2021) (collecting cases); Dang, 2020 WL 6364898, at *3 (holding that defendant's status as a principal, paired with conclusory allegations, was "insufficient for the Court to infer his authorization, supervision, or knowledge of the violations"); El Ojo Aqua, 2014 WL 4700014, at *4 (denying individual liability because plaintiff "infer[ed] too much" from defendant being the principal of defendant corporation's liquor license, which "does nothing to suggest either that [the individual defendant] had anything to do with the decision to display the Event on [corporation defendant's] television screens or that he had an obvious and direct financial interest in the exploitation of the Event").  The Court therefore respectfully

recommends that the Court deny Plaintiff's motion for default judgment as to the individual Defendants.

As for § 533, conduct that violates § 605 may also violate § 553. See Int'l Cablevision v. Sykes, 75 F.3d 123, 132–33 (2d. Cir. 1996). Plaintiff's complaint asserts claims under both statutes. See ECF No. 1. Courts are not permitted to grant damages under both § 605 and § 553 for a single illegal transmission. See Int'l Cablevision, 997 F.2d at 1009. Instead, the Second Circuit has held that where a defendant is liable for both statutes, courts should award damages pursuant to § 605. Id. Plaintiff acknowledges this limitation in its memorandum in support of the motion for default judgment, and it opts for damages solely under § 605. See ECF No. 12-1 at 4–5. "Because plaintiff is entitled to default judgment under [§] 605, which allows for a greater recovery than does [§] 553, the court will not address plaintiff's claim under [§] 553." Joe Hand Promotions, Inc. v. Dilone, No. 19 Civ. 871 (NGG) (RML), 2020 WL 2572271, at *3 n.2 (E.D.N.Y. Jan. 23, 2020), report & recommendation adopted in part, 2020 WL 1242757 (E.D.N.Y. Mar. 16, 2020) (internal quotation marks omitted).[6]

### d. Damages

#### i. Statutory Damages

Because Plaintiff established Defendant The Crisis Bar LLC's liability, Plaintiff is entitled to damages.[7] If a complaint suffices to establish liability, the court is left to conduct an

---

[6] Even if Plaintiff had sought damages under § 553 for the individual Defendants, Plaintiff failed to show the liability of individual Defendants for the same reason provided above for § 605. See Gonzalez, 2021 WL 9822076, at *4 ("Courts in this District time and time again" that conclusory allegations identifying defendants as "Owner[s] and Principal[s]" are "insufficient to hold individual defendants vicariously liable for claims under 47 U.S.C. §§ 605 and 553.").

[7] Unlike the liability determination, in which the Court may rely upon the complaint, a plaintiff "bears the burden of establishing [its] entitlement to recovery" of damages and "thus must

inquiry to establish damages to a "reasonable certainty."  Credit Lyonnais Secs., 183 F.3d at 155

(citing Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir.

1997)).  "[A]lthough the court must ensure that there is a basis for the damages specified in a

default judgment, it may, but need not, make the determination through a hearing."  Fustok v.

Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir.

1989).  The evidence a movant must provide in regards to damages is evidence that "the

compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992)

(citation omitted).

Section 605 provides for statutory damages for each violation "in a sum of not less than

$1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(3)(C)(i)(II).

There are two methods courts have used to determine an award within the discretionary range.

First, courts will "multiply the number of individuals who watched the unauthorized broadcast in

the defendant's commercial establishment by an amount representing the licensing fee charged to

display the telecast in a residence, on the theory that each such individual would have paid to

watch the broadcast at home."  El Ojo Aqua, 2014 WL 4700014, at *5.  Second, "the court

calculates the amount that defendants would have paid in exchange for the right to show the

[event or program] legally—in this case, Plaintiff's licensing fee."  Espinal, 2020 WL 2747981,

at *4 (alterations in original).  "[C]ourts in this Circuit award the higher of the two methods"

when calculating damages under § 605.  Innovative Sports Mgmt., Inc. v. Mejia, No. 20 Civ.

2943 (PKC) (RER), 2021 WL 7709510, at *6 (E.D.N.Y. Aug. 3, 2021); J & J Sports Prods., Inc.

---

substantiate [its] claim with evidence" sufficient to earn the damages it seeks.  Dunn, 2012 WL
676350, at *2.

v. Monte Limar Sports Bar Inc., No. 15 Civ. 3771, 2017 WL 933079, at *4 (E.D.N.Y. Mar. 8, 2017) ("[T]he higher of the two amounts is generally awarded.").

For the first method, Plaintiff argues that "Defendants profited at least $1,000[] from the cover charge . . . for the broadcast of the [Wilder v. Fury fight] on December 1, 2018." ECF No. 12-1 at 11.  Plaintiff's auditor reported that the cover charge for the December 1, 2018 Wilder v. Fury broadcast was $20, and that 50 patrons were present while the fight was displayed.  See ECF No. 12-12.  The $20 cover charge multiplied by the 50 patrons would equal $1,000.  The auditor did not distinguish between the bar's regular patronage and patrons drawn by the fight transmission.  See Shaikh, 2020 WL 1878165, at *6 ("[P]laintiff has not established whether the individuals in the establishment at the time of the Event exceeded the number of patrons regularly present . . . .").  Plaintiff alleges The Crisis Bar advertised for broadcasts of the other four Programs.  ECF No. 12-16.  Only the advertising for the December 1st fight mentions a cover charge, id.; Plaintiff does not allege that The Crisis Bar LLC took a cover charge for the other four Programs, ECF No. 12-1 at 11.  Plaintiff also does not provide an approximate number of patrons who observed the other four Programs at The Crisis Bar.  In fact, Plaintiff does not offer evidence that the fights other than the December 1st fight were ever broadcast at the bar (as opposed to merely being advertised) by Defendants or attended by anyone, let alone that any patrons were brought to the bar by a Program.  The Court cannot calculate damages for any fight except the December 1st one with any certainty.  See Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co., No. 18 Civ. 2318 (LGS) (BCM), 2022 WL 17490873, at *4 (S.D.N.Y. Nov. 18, 2022) (even in default, damages must be established with "reasonable certainty" (internal quotation marks omitted)); Dunn, 2012 WL 676350, at *2 (holding that the plaintiff bears the burden of presenting evidence to show entitlement to damages).

For the second method of calculating Section 605 damages, Plaintiff requests that the Court treat each Program as a separate violation and asks for $11,100 in statutory damages, "equal to the total licensing fees Defendants should have paid" to display the Programs. ECF No. 12-1 at 8. Among the documents Plaintiff submitted for its motion are the agreements and pay rates it charged for commercial establishments with a capacity of 125 patrons[8] to display the Programs: (1) $700 for Wilder v. Breazeale, see ECF No. 12-6; (2) $2,700 for Wilder v. Fury, see ECF No. 12-8; (3) $3,000 for Pacquiao v. Broner, see ECF No. 12-9; (4) $2,200 for Spence v. Garcia, see ECF No. 12-10; and (5) $2,500 for Wilder v. Fury II, see ECF No. 12-11. The $700 for the Wilder v. Breazeale broadcast falls short of the $1,000 minimum for an individual violation, however. See 47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages for individual violations must be "in a sum of not less than $1,000 or more than $10,000, as the court considers just"). The Court must round the $700 up to $1,000 to meet the statutory damages minimum for the Wilder v. Breazeale fight. See J & J Sports Prods., Inc. v. El Sonador Cafe Rest. Inc., No. 17 Civ. 3357 (ILG), 2017 WL 6397731, at *4 (E.D.N.Y. Dec. 14, 2017) (rounding up to $1,000 when calculating with the "total licensing fees" method); Joe Hand Promotions, Inc. v. Linares, No. 06 Civ. 4022 (DLI) (CLP), 2007 WL 9710671, at *7 (E.D.N.Y. June 28, 2007), report & recommendation adopted sub nom., Joe Hand Promotions, Inc. v. Los Lobos Billiards, 2007 WL 9710672 (E.D.N.Y. July 20, 2007) (same with per-patron method). The total statutory damages under the second method would therefore be $11,400.

Given the lack of information about the number of patrons at The Crisis Bar for four of the five fights, the application of the first method of calculating damages is impractical to apply

---

[8] Plaintiff's auditor estimated that 125 was the maximum capacity of The Crisis Bar. See ECF No. 12-12.

on this record.  The Court thus applies the second method of calculating damages against The

Crisis Bar LLC.  It is respectfully recommended that Plaintiff be awarded $11,400 in statutory

damages.[9]  See Joe Hand Prods., Inc. v. Talt, No. 21 Civ. 5550 (JMA) (JMW), 2022 WL

3867670, at *1 (E.D.N.Y. Aug. 30, 2022) (applying the flat-fee method where it would give "the

higher of the two" totals for damages and plaintiff failed to specify the price customers would

have paid to observe the pirated events (internal quotation marks omitted)); Mejia, 2021 WL

7709510, at *6; Joe Hand Promotions, Inc. v. Bernal, No. 18 Civ. 85 (ILG) (SJB), 2019 WL

885930, at *4–5 (E.D.N.Y. Feb. 22, 2019) (awarding statutory damages equal to the licensing fee

where the plaintiff failed to specify the number of patrons).

### ii.  Enhanced Damages

Plaintiffs also request enhanced damages pursuant to § 605(e)(3)(C)(ii), claiming that

Defendant The Crisis Bar LLC's violation was willful.  See ECF No. 12-1 at 8.  If an

infringement "was committed willfully and for purposes of direct or indirect commercial

advantage or private financial gain, the court in its discretion may increase the award of

damages, whether actual or statutory, by an amount of not more than $100,000."  47 U.S.C.

§ 605(e)(3)(C)(ii).  "Willfulness is generally presumed in cases arising under § 605 where the

defendant defaults."  Disla, 2020 WL 2572268, at *4 (internal quotation marks omitted); see

Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y.

1999) ("Signals do not descramble spontaneously nor do television sets connect themselves to

cable distribution systems.").  Here, Plaintiff also allegedly informed Defendant by a letter dated

January 2, 2019 that their displays of the Programs were illegal and demanded that they cease.

---

[9] Although Plaintiff requests a total of $11,100, it also requests more than the statutory minimum
for each violation, so there is no risk that Defendants were not on notice of a potential award of
more than $11,100.

See ECF No. 12-17.  Four of the programs were shown after this date.  Id.  Given the corporate

Defendant's default despite multiple notices about this action and Plaintiff's alleged letter

informing Defendant of Plaintiff's concerns, The Crisis Bar's violations can be regarded as

willful such that Plaintiff is eligible to receive some enhanced damages pursuant to 47 U.S.C.

§ 605(e)(3)(C)(ii).

As for the appropriate amount of enhanced damages, "courts in this Circuit typically

award . . . a multiple of the statutory damages award."  Disla, 2020 WL 2572268, at *4 (internal

quotation marks and alterations omitted).  "To determine whether willful conduct justifies an

award of enhanced damages, the court considers whether there is evidence of (i) repeated

violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful

monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's

collection of a cover charge or premiums for food and drinks."  Bernal, 2019 WL 885930, at *5

(internal quotation marks omitted).  In some cases, the court has declined to award enhanced

damages even assuming willfulness where none of the five factors is present, and the violations

were committed by a small business.  See Shaikh, 2020 WL 1878165, at *7–8 (declining to

impose enhanced damages where, in spite of presumed willfulness, plaintiff failed to show any

of the five factors were present and the defendant was a small business); J & J Sports Prods., Inc.

v. Mar Y Las Estrellas Rest. Corp, No. 17 Civ. 1190 (MKB) (ST), 2018 WL 4583489, at *7

(E.D.N.Y. Sept. 25, 2018) (holding that, even assuming willfulness, enhanced damages were not

warranted because plaintiff "fail[ed] to set forth facts supporting any of the enumerated factors,"

and there was only a single violation by a small business).  In other cases, the court has declined

to award enhanced damages where, irrespective of the factors, the plaintiff failed to present

evidence that the defendant exhibited the allegedly pirated program for any commercial

advantage.  See, e.g., J&J Sports Prods., Inc. v. Louisas, No. 06 Civ. 339 (ERK) (RER), 2006 WL 1662608, at *5–6 (E.D.N.Y. May 16, 2006) (awarding zero enhanced damages where there was no evidence of defendant "making any money as a result of broadcasting" the program or otherwise receiving a "commercial advantage").

Here, Plaintiff offered little evidence of actual damages, save for the allegedly lost licensing fee already incorporated in the statutory damages above, or of substantial gains by the Defendant.  Although the Court recommended an award of statutory damages of $11,400, supra at 21, the Court observes that this penalty is quite significant in light of the size of Defendant's business.  In fact, any profit Defendant may have made from the Programs, if they were shown, is likely dwarfed by the statutory penalty.  See, e.g., Joe Hand Prods., Inc. v. Rossi, No. 20 Civ. 6534 (NRB), 2022 WL 3903596, at *2–3 (S.D.N.Y. Aug. 30, 2022) (denying enhanced damages where "any profit defendants received as a result of [the broadcast] was minimal" and "defendants' profits on the night of the [broadcast] are likely dwarfed by the statutory penalty plaintiff requests").  This case is similar to Rossi in that the Court here, too, wonders if a small business with a limited number of patrons interested in a fight would have even shown a fight legally because such a showing would appear to not have made economic sense.  Id. ("[I]t follows that had defendants not shown the [broadcast] illegally, they likely would not have shown it at all.").  The sufficient deterrent impact of the recommended statutory damages therefore informs the enhanced-damages analysis.  Among the types of evidence that the Court may consider as to enhanced damages, Plaintiff has only presented evidence that Defendant advertised the display of the Programs, see ECF No. 12-16, and that Defendant imposed a cover charge for one of them, see ECF No. 12-12.  Although Plaintiff alleges that it informed Defendant of the alleged infringement by letter, the record does not contain confirmation that

Defendants received this letter.  See ECF No. 12-17.  Plaintiff has not offered evidence that Defendant is a repeat offender in this area.  Defendant thus has only shown two of the five factors with respect to calculating actual damages for the December 1 fight—a cover charge and advertising—and only one factor as to the others—advertising.

For the December 1 fight, the presence of two factors, including evidence of advertising the Program and imposing a cover charge for patrons who wished to enter the bar and see the fight, counsels against an award of zero enhanced damages.  See Shaikh, 2020 WL 1878165, at *7–8.  Even so, "[d]istrict courts tend to award enhanced damages equal to the statutory award when, despite some evidence of willfulness, defendants are first-time offenders, running small-scale operations."  Disla, 2020 WL 2572268, at *4 (awarding enhanced damages equal to the statutory award where defendants advertised pirated programming but there was no other evidence of willfulness).  It is respectfully recommended that Plaintiff be awarded $2,700 in enhanced damages for Defendant's individual violation on December 1, which is equal to the statutory amount recommended.  See Disla, 2020 WL 2572268, at *4.

For the other four fights, the advertising found on The Crisis Bar's Facebook is the only willfulness factor present.  See ECF No. 12-16.  Unlike with the December 1 fight, in which Plaintiff's auditor was present to see the broadcast and note the cover charge and attendees, there is no evidence that the four fights were displayed at the Crisis Bar, that any alleged Programs were watched by customers, or that Defendant received any financial gain from the alleged displays.  See Daley, 2007 WL 7135707, at *6 (denying enhanced damages where plaintiff "fail[ed] to show that [the defendant] sought financial gain in displaying" a pirated broadcast).  As such, there is no evidence that Defendant gained a commercial advantage as a result of these four broadcasts.  See Louisias, 2006 WL 1662608, at *4–5 (denying enhanced damages because,

although patrons were present when the intercepted program was displayed, "services needed to have been provided and money needed to change hands for the exhibition of the Event to have been for commercial advantage," and plaintiff failed to show evidence of "any such activity"). Because of the lack of evidence as to commercial advantage and the size of Defendant's business given its limited capacity to hold patrons, it is respectfully recommended that the Court not award enhanced damages for the remaining four alleged violations.

### e. Attorney's Fees And Costs

Section 605 of the FCA provides that "[t]he court shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). "The court has discretion to determine the amount of attorneys' fees appropriate to satisfy a fee award." Joe Hand Promotions, Inc. v. Benitez, No. 18 Civ. 6476 (ARR) (PK), 2020 WL 5519200, at *6 (E.D.N.Y. Aug. 27, 2020), report & recommendation adopted, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020). "[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted).

Here, Plaintiff requests a total of $1,435 in attorney's fees, which account for 4.1 hours of work at a rate of $350 per hour according to a declaration from Plaintiff's attorney, Jon D. Jekielek, and accompanying time log detailing his work. See ECF Nos. 17, 18. Although the amount of hours spent on the case appears reasonable, this Court has previously found in similar cases that $300 is a reasonable hourly rate for Mr. Jekielek, particularly in light of the boilerplate nature of § 605 default-judgment litigation. See Benitez, 2020 WL 5519200, at *7 ("Courts in this District have found $300 to be a reasonable hourly rate for Jekielek."); Zuffa, LLC v. S.

Beach Saloon, Inc., No. 15 Civ. 6355 (ADS) (AKT), 2019 WL 1322620, at *9 (E.D.N.Y. Mar. 6, 2019), report & recommendation adopted, 2019 WL 1317568 (E.D.N.Y. Mar. 22, 2019) ("[T]he Court finds $300 to be an appropriate hourly rate for Attorney Jekielek."); see also Bernal, 2019 WL 885930, at *6 (lowering attorney's fees from $350 per hour to $300 per hour "[i]n light of the boilerplate nature of default judgment cases under § 605").  It is therefore respectfully recommended that Plaintiff be awarded $1,230 in attorney's fees, equal to $300 multiplied by 4.1 hours.

Plaintiff also requests costs in the amount of $607, representing $402 in filing fees and $205 for service of process.  See ECF No. 12-1 at 16.  The Court takes judicial notice of the $402 filing fee in this District.  See Ferrara v. Heavy Constr. Lumber, Inc., No. 21 Civ. 2562 (DG) (CLP), 2022 WL 1085380, at *8 (E.D.N.Y. Jan. 5, 2022).  Plaintiff has provided an invoice for service of process reflecting the $205 figure to serve the summons and complaint on all Defendants.  See ECF No. 12-19.  Although this Court does not recommend a default judgment be entered against the individual Defendants, the Court recommends approval of the full service fee bill because service on the principals of the business served as supplemental service on the corporate Defendant to try to avoid a default.  Plaintiff's calculated amount for costs is reasonable, and it is therefore respectfully recommended that Plaintiff be awarded $607 in costs. See Beer Closet, 2018 WL 4138938, at *6 (finding that $400 for filing fees and $190 for service of process was reasonable).

## IV.    Conclusions

For the reasons stated above, this Court respectfully recommends that the District Court grant Plaintiff's motion for default judgment with respect to its claim under § 605 against The Crisis Bar LLC but deny the motion with respect to the individual Defendants Roscoe Neely and

26

Alicia Richardson Neely; award Plaintiff $11,400 in statutory damages; $2,700 in enhanced damages; $1,230 in attorney's fees; and $607 in costs against The Crisis Bar LLC, for a total award of $15,937; and deny all other requested relief.

## V.   Objections

This report and recommendation will be filed electronically.  The Court will mail a copy of this report and recommendation to Defendants at The Crisis Bar LLC d/b/a The Crisis Bar, 913 Broadway, Brooklyn, NY 11206; Roscoe Neely, 913 Broadway, Brooklyn NY 11206; Roscoe Neely, 510 Kosciusko Street, Brooklyn, NY 11221; Alicia Richardson Neely, 913 Broadway, Brooklyn, NY 11206; and Alicia Richardson Neely, 510 Kosciusko Street, Brooklyn, NY 11221.

Written objections to this report and recommendation must be filed with the Clerk of the Court within the time permitted after service of the report and recommendation, and in accordance with the Individual Rules of the District Judge.  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this report and recommendation.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b); see also Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Dated:  Brooklyn, New York
      January 19, 2023

                                   *Vera M. Scanlon*
                                 VERA M. SCANLON
                      United States Magistrate Judge